IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

GARY GIBSON, JR. and SHAWNA          )          CASE NO.:  8:16-cv-296
GIBSON, husband and wife,            )
                                     )
        Plaintiffs,                  )     **PLAINTIFFS' BRIEF OPPOSING**
                                     )     **DEFENDANTS BRIESON JENSEN AND**
    v.                               )     **FARMERS CO-OPERATIVE'S MOTION**
                                     )     **FOR PARTIAL SUMMARY JUDGMENT**
BRIESON JENSEN and FARMERS           )     **OR, IN THE ALTERNATIVE, TO**
CO-OPERATIVE,                        )     **BIFURCATE**
                                     )
        Defendants.                  )

COME NOW, the Plaintiffs, Gary Gibson, Jr. and Shawna Gibson, husband and wife, by and through their undersigned counsel, and submit this Brief in Opposition to Defendants' Brieson Jensen ("Jensen") and Farmers Co-Operative ("the Co-Op") (collectively, the "Defendants") Motion for Partial Summary Judgment or, in the Alternative, to Bifurcate (the "Motion").

## INTRODUCTION

This case arises out of an accident that occurred on June 26, 2013, where Jensen was obstructing the northbound lane of Highway 57 at the intersection with 857th Road in Wayne County, Nebraska, because he did not know where he was going, and then made an unsafe and improper turn from partially off the road, which caused Plaintiff Gary Gibson ("Plaintiff") severe injuries. (Filing No. 4, ¶ 7-23). Jensen was not alone in causing the accident. His employer, the Co-Op, caused the harm suffered by Plaintiff by hiring an unfit individual to operate heavy machinery on the public roads, by giving that individual next to no relevant training regarding the operation of heavy machinery on the public roads, and by negligently failing to supervise his operation of that equipment. The negligent acts of Jensen and the Co-Op caused the Plaintiff's injuries.

Defendants have now filed the Motion, arguing that even though Nebraska has never provided for such a rule, the Nebraska Supreme Court would hold that because the Co-Op would be liable for Jensen's negligence under the doctrine of respondeat

superior, Plaintiff's claims for negligent hiring, training, and supervision should be dismissed. Defendants' proposed rule is not the law in Nebraska, and existing Nebraska case law does not support Defendants' projection of how the Nebraska Supreme Court would rule on this issue. This is evidenced by the fact that two federal courts applying Nebraska law have declined to apply their proposed rule, and by the fact that their proposed rule is incompatible with Nebraska's comparative negligence system. Further, a thorough analysis of the undisputed facts of this case demonstrates that since Jensen's liability is a critical issue in this case, evidence of the Co-Op's negligence is likewise critical information for the jury to consider. Finally, the Defendants' Motion to Bifurcate the proceeding must be overruled because it is critical for the trier of fact to consider the respective negligent conduct of the Defendants in order to come to a just allocation of fault and because it would not serve the interests of judicial economy. Therefore, the Defendants' Motion should be denied.

## PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS

**1.** In June 2013, the month of the accident which is the subject of this lawsuit, Jensen was 20 years old and did not have any experience operating heavy machinery on the public roads. (Exhibit "A," Deposition Transcript of Brieson Jensen ("Jensen Depo") Exhibit 1 thereto); (Deposition Transcript of Aaron Becker (Exhibit "B") ("Becker Depo")) p. 35:16).

**2.** In June of 2010 or 2011, Jensen received a speeding ticket for going 75 miles per hour in a 50 mile per hour zone. (Jensen Depo. p. 94:13-94:18).

**3.** On October 22, 2011, Jensen received a citation for speeding 11 to 15 miles over the speed limit. (Jensen Depo. p. 99:4); (Filing No. 4 ¶ 38(c)).

**4.** In October 13, 2012, Jensen received a citation for, and was ultimately convicted of, careless driving. He was returning to Nebraska from Oklahoma and he fell asleep while driving. The vehicle he was driving rolled off the road and the vehicle was rendered inoperable. (Jensen Depo. p. 99:10-22); (Filing No. 4 ¶ 38(d)).

**5.** Jensen pled guilty to driving under the influence on April 1, 2013. As a requirement of his plea arrangement, he received an ignition interlock permit. (Jensen Depo. p. 21:3-22:16).

2

6.      On June 19, 2013, about one week before the accident. which is the subject of this lawsuit, Jensen received a citation for a stop sign violation. (Jensen Depo. p. 100:16).

7.      Jensen's father had been an employee of the Co-Op. Jensen's father asked an employee of the Co-Op if Jensen could work there. Jensen was hired initially to perform manual tasks on the Co-Op's premises, such as scooping bins and mowing the lawn. (Becker Depo. p. 19:17-20:19; 20:20-21:7).

8.      At the time of Jensen's hiring, the Co-Op was aware that Jensen had just received his DUI. (Becker Depo. p. 21:8-21:11).

9.      While the Co-Op was aware of Jensen's DUI (due to the restrictions on his driver's license), there is no evidence to suggest it took any steps to inform itself of his driving history. (Becker Depo. p. 72:15-16).

10.      Aaron Becker was the General Manager/President of the Co-Op beginning in June of 2013, and therefore had authority over employment positions. Prior to that time, the relevant individual who had the employment authority was Jerry Wyatt. (Becker Depo p. 13:2-15:9).

11.      There is no evidence to suggest that anyone from the Co-Op ever contacted Jensen's references. (Becker Depo. p. 61:7-63:6).

12.      With the assistance of the Co-Op, Jensen obtained his pesticide applicator license around early June 2013. (Becker Depo. p. 26:25-27:23).

13.      At the time Jensen obtained his applicator's license, the Co-Op did not have any policies relating to training of new hires on how to operate the RoGator in general, and no specific policies for training new hires on how to operate the RoGator in a safe and responsible manner. (Becker Depo. p. 31:12-32:2).

14.      Jensen's training consisted of riding with a current employee who operated a RoGator and being shown by such employee how to operate the machine. (Becker Depo. p. 31:23-32:1-2).

15.      Consistent with the Co-Op's lack of concern towards adequately training its employees, the Co-Op did not have a set period of time for the training of a new RoGator operator. The duration of training was based on whether the Co-Op's current

RoGator operators felt that the trainee was competent to operate the machine in the field. (Becker Depo. p. 32:7-12).

      **16.**    Jensen spent about a week riding along in the field learning how to get in position for loading and he spent another week learning how to drive into a field. Characteristic of the Co-Op's attitude towards ensuring its new hires received proper training for operating its machinery on the open road, Jensen spent only two days with a co-driver while Jensen operated the RoGator. (Jensen Depo. p. 35:2-36:24).

      **17.**    Likewise, the majority of his hands-on training was not spent on presumably the most dangerous part of his job, driving on the public highways, but rather was spent training to spread fertilizer. (Becker Depo. p. 38:4).

      **18.**    At the time the decision was made to allow Jensen to operate the RoGator on public roads, Jensen had a valid driver's license, and Becker assumed, in addition to the applicator's license, that was all that was required in order to operate the RoGator. (Becker Depo. p. 33:20-25; 34:1).

      **19.**    Unsurprisingly, the undisputed evidence is that the only training Jensen received with respect to operating the RoGator on the public roads was a general instruction to follow the traffic laws. (Jensen Depo. p. 38:2-39:18).

      **20.**    On the date of the accident, the only supervision Jensen was given was a stack of papers he received regarding properties on which he was to apply fertilizer and being shown the properties on a plat map of the County. (Jensen Depo. p. 52:2).

      **21.**    Jensen headed towards the scene of the accident with a limited understanding of where he was going and how he was going to get there. Jensen was heading north on Highway 57, about a mile from the intersection in which the accident would occur; this was the first time he had ever driven that route. (Jensen Depo. p. 58:5-8; 61:13).

      **22.**    Upon approaching the intersection of Highway 57 and 857th Road, Jensen slowed down from the 24 miles per hour he was going to a speed lower than eight miles an hour in an effort to determine where he was, where he was going, and how he was going to get there, which was critical information that had not been properly communicated to him beforehand. Jensen was going to determine all of this while behind the wheel of the RoGator. (Jensen Depo. p. 66:5-10).

4

**23.** As Jensen was approaching the intersection, he was totally absorbed by the problem of determining his route to get to his destination; he was constantly looking around at the area, trying to determine whether to turn left at 857th road or continue on to the next intersection. (Jensen Depo. p. 70:15-20; 73:1-4).

**24.** Jensen veered onto to the shoulder next to the road, and his RoGator was therefore partially off the road prior to the beginning of his turn. (Jensen Depo. p. 72:11:17).

**25.** At the point before he began his turn, he was essentially stopped for about 15 seconds, while he continued to deliberate about what he was going to do next and while he obstructed the intersection. (Jensen Depo. p. 72:19-20; 73:13).

**26.** Around 30 to 40 percent through the left turn, Jensen claims that he heard an air horn, looked over his shoulder, and realized he was about to be struck be an oncoming vehicle, which was Plaintiff's semi-trailer. (Jensen Depo. p. 75:5-10).

**27.** Plaintiff's semi-tractor, which had been in the left lane to avoid Plaintiff's obstruction, impacted the RoGator operated by Jensen, then continued down off the road, where it came to rest after striking a tree. Plaintiff's semi-tractor then caught fire while Plaintiff was still in the vehicle; the Plaintiff suffered injuries as a result. (Filing No. 4, p. 16-17).

**28.** Despite the evidence that Jensen had improperly obstructed the intersection, the Co-Op determined that Jensen had not been at fault in the accident. (Becker Depo. p. 44:2). However, Becker also went through actual training about what Becker describes as "the right things, flashers, blinkers, everything to avoid these kinds of things. . .," where "the right things" appear to refer to instruction about how to safely operate the RoGator on the public road in an effort to prevent future accidents. (Becker Depo. 44:7-12).

**29.** Similarly, while before the accident occurred, the company did not take into account a person's driving history while determining how much training that person would require. The Co-Op does so now. (Becker Depo. 72:2-16).

### PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF FACTS

For the purpose of responding to Defendants' Motion for Summary Judgment only, Plaintiffs admit Defendants' Statement of Facts except to the extent their narrow

characterization of the accident does not take into account Jensen's obstruction of the intersection because of his prolonged indecision of where he was going to turn, and the fact that he was making his turn from the shoulder of the road. (Jensen Depo. p. 72:19-20; 73:13); see, (Exhibit C, Expert Report of Steve F. Sokol, P.E., J.D.).

## ARGUMENT

Although the Defendants describe the virtues of the so-called "majority rule,"[1] the main thrust of their argument is that, if presented with the issue, the Nebraska Supreme Court would hold that the admission of respondeat superior by an employer would preclude a plaintiff from concurrently bringing a direct action against the employer for negligent hiring, training, and supervision. (Filing No. 45, p. 20). According to the Defendant, this holding is demanded by Nebraska Supreme Court's holding in Schieffer v. Catholic Archdiocese, 244 Neb. 715, 716, 508 N.W.2d 907, 909 (1993) ("an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person.") (quoting Strock v. Pressnell, 38 Ohio St. 3d 207, 217, 527 N.E.2d 1235, 1244 (1988)). According to the Defendants, Schieffer stands for the proposition that under Nebraska law, negligent hiring, training, and supervision claims are derivative of the employee's negligent conduct, and the derivative nature of those claims means that the Nebraska Supreme Court would likely adopt their proposed rule.

However, negligent hiring, training, and supervision claims are not derivative of the employee's negligence under Nebraska law. Rather, Nebraska law provides that the employee's negligence is simply a component of the proximate cause requirement common to all negligence claims, and therefore is, like all negligence claims, a direct claim. Moreover, the fact that Defendants' proposed rule conflicts Nebraska's system of comparative negligence is further evidence that the Nebraska Supreme Court would not likely adopt their proposed rule. Further, the facts of the case at bar demonstrate the need for these types of claims where the negligence of the employee is contested. Finally, the presentation of evidence of Jensen's negligence and the Co-Op's

---

[1] As the Kentucky Supreme Court has noted such a characterization is not warranted given that there is a "fairly even split among jurisdictions in adopting the conflicting rules . . . ." MV Transportation, Inc. v. Alligeier, 433 S.W.3d 324, 334 n.8 (Ky. 2014). Therefore, this brief will not refer to Defendants' proposed rule as such.

negligence must be presented together, as Defendants' separate acts and omissions combined together to cause the accident.

This Court is tasked with accurately predicting how the Nebraska Supreme would rule on the issue presented in this case. Mindful of the "well-established principle that federal courts should not expand state law beyond the boundaries of established state precedent," this Court should reject the arguments made Defendants' Motion. Planera-Ohren v. Guerrero, No. 15-cv-2285, 2017 U.S. Dist. LEXIS 69591, at *5 (N.D. Ill. May 8, 2017) (quoting, Sompo Japan Ins. Co. of America, Inc. v. Alliance Transp. Group., LLC, 627 F. Supp. 2d 897, 904 (N.D. Ill. 2009)). The Co-Op's negligent conduct directly bears on the contested issue of liability in this case. Plaintiffs' claims of negligent hiring and training are being brought to hold the Co-Op accountable for its repeated failures which caused the Plaintiffs' damages, not as an attempt to present irrelevant evidence. Because the key issue of liability is contested all of the causes of the accident should be considered by the jury.

### A.      Nebraska Law Does Not Support The Defendants' Proposed Rule

#### 1.      *Schieffer Stands For The Proposition That The Employee's Negligence Is A Required Element Of Proximate Cause*

In Nebraska, a person who conducts activities through servants or agents is liable for harm resulting from his negligence in "the employment of improper persons . . . in work involving the risk of harm to other." Greening v. Sch. Dist., 223 Neb. 729, 737-38, 393 N.W.2d 51, 58 (1986) (quoting Restatement 2d of Agency § 213); Kime v. Hobbs, 252 Neb. 407, 418-19, 562 N.W.2d 705, 713 (1997). As the Restatement of Agency points out, this cause of action is "not based upon any rule of the law of principal and agent or of master and servant," but is rooted in the law of negligence. Restatement (Second) of Agency § 213, cmt. a. Thus, the required elements for a negligent employment, training, or supervision claim are duty, breach, causation, and damages. See McFadden Ranch, Inc. v. McFadden, 19 Neb. App. 366, 369, 807 N.W.2d 785, 789 (2011). In order to show proximate cause in the context of negligent hiring cases, Nebraska law requires that a plaintiff prove that "the conduct of the incompetent employee was a proximate cause of injury to another." Greening v. Sch. Dist., 223 Neb. 729, 737, 393 N.W.2d 51, 58 (1986). Therefore, under Nebraska law;

(1) a negligent hiring claim requires a showing of duty, breach, causation, and damages, (2) proximate cause is a required showing under the causation requirement, and (3) in order to show proximate cause, the Plaintiff must show that the incompetent employee proximately caused the injury.

Therefore, as the Nebraska Supreme Court in <u>Schieffer</u> held, in negligent hiring, supervision, and negligent training cases, the employee's incompetent conduct is an "underlying requirement," because it is a component of the causation requirement that underlies all successful negligence actions. <u>Schieffer</u>, 244 Neb. at 723, 508 N.W.2d at 913. Saying that a plaintiff claiming negligent hiring, supervision or, retention must show that the employee was liable **does not** necessarily mean that requirement is the same or even similar to the doctrine of respondeat superior. The defining feature of the doctrine of respondeat superior is that an employer can be liable to a third person without any allegation of negligent conduct on the part of the employer. <u>See</u> <u>Dickey v. Estate of Meier</u>, 188 Neb. 420, 423, 197 N.W.2d 385, 387 (1972) ("[employer's] liability was purely derivative, stemming from the sole negligence of the employee-agent, and resting upon the employer-principal only because of the doctrine of respondeat superior."). By contrast, under Nebraska law, in negligent hiring, training, and supervision, the requirement of showing the employee's negligence flows from the requirements of general negligence law. The employer is directly liable to the third party because of it its wrongful conduct, not in virtue of its relationship with the employee. Since <u>Schieffer</u> stands for proposition that the incompetence of the employee, as a component of proximate cause, is required to be proven in negligence, Nebraska law recognizes that vicarious liability of an employer and the direct liability of the employer owing to its wrongful acts are distinct sources of liability and therefore are not equivalent causes of action.

### 2. *Two Federal Courts Have Investigated Nebraska Law And Concluded That The Nebraska Supreme Court Would Not Adopt The Defendants' Proposed Rule*

This Court is tasked with determining, on the basis of Nebraska law as it currently exists, how the Nebraska Supreme Court would rule. The general principle that "federal courts are reluctant to expand state law beyond the boundaries of

established precedent" applies. <u>Sompo Japan Ins. Co. of Am. v. All. Transp. Grp</u>., LLC, 627 F. Supp. 2d 897, 904 (N.D. Ill. 2009). Recognizing that principle; two separate federal courts have examined the issue, and have concluded that the Nebraska Supreme Court would not adopt the Defendants' proposed rule. <u>See</u> <u>Planera-Ohren v. Guerrero</u>, No. 15-cv-2285, 2017 U.S. Dist. LEXIS 69591, at *5 (N.D. Ill. May 8, 2017) ("this Court, having conducted its own review of Nebraska law, can see no reason to deviate from [the conclusion that the Nebraska Supreme Court would not adopt the Defendants' proposed rule]."); <u>Kozlov v. Associated Wholesale Grocers, Inc.</u>, No. 4:10CV3211, 2014 U.S. Dist. LEXIS 54557, at *18 (D. Neb. Apr. 18, 2014) ("[n]either can the Court find any indication as to which view Nebraska courts would adopt."). Defendants point out that the parties in the <u>Kozlov</u> case did not bring any Nebraska case law to bear on this issue. However, Chief Judge Smith Camp in <u>Kozlov</u> undertook an independent review of Nebraska law and did not find any indication as to how the Nebraska Supreme Court would rule. See <u>Kozlov</u>, 2014 U.S. Dist. LEXIS 54557, at *18. The fact that two federal district courts, when presented with the issue, could not find any indication in the case law of Nebraska as to how the Nebraska Supreme Court would rule on this issue, is strong evidence that this Court should be wary of the Defendants' request to push the boundaries of Nebraska law past where it currently stands.

### 3.   The Defendants Proposed Rule Is Inconsistent With Nebraska's System Of Comparative Fault

The Defendants' proposed rule would be inconsistent with Nebraska's system of comparative fault. Nebraska's comparative fault system exists to allow "triers of fact to compare relative negligence and to apportion damages on that basis." <u>Stinson v. City of Lincoln</u>, 9 Neb. App. 642, 617 N.W.2d 456 (2000). Under Nebraska statutory law, if a plaintiff is more than 50% negligent as to his own safety, he does not recover any damages. NEB. REV. STAT. § 25-21,185.09. Among multiple tortfeasors, the trier of fact determines the amount of the plaintiff's noneconomic damages proximately caused by the defendants and then allocates a portion to each defendant according to that defendant's percentage of negligence. NEB. REV. STAT. § 25-21,185.10.

In Nebraska, claims for negligent hiring, training, and supervision arise out of the negligent acts or omissions of an employer which proximately causes harm to the plaintiff. As such, the employer's acts or omissions are absolutely critical for the triers of fact to come to a just determination of the respective allocation of fault, and removing that from the trier of fact's deliberations arbitrarily limits the scope of their inquiry. Suppose an employee injures a plaintiff in the course and scope of his duties. A jury may find about equal fault between the two parties, in which case the plaintiff does not recover. But, if the negligent conduct of the employer is considered, and the jury decides that the employer's negligent omission <u>also</u> proximately caused harm, then in the same scenario the plaintiff would much more likely be entitled to recover damages. <u>See</u> J.J. Burns, <u>Respondeat Superior as an Affirmative Defense: How Employers Immunize Themselves from Direct Negligence Claims</u>, Note, 109 Mich. L. Rev. 657, 664-65 (2011). The arbitrary difference in results shows the incompatibility of Defendants' proposed rule with Nebraska's comparative fault system.

A further example shows how the Defendants' proposed rule would undermine Nebraska's comparative negligence system. In general, under Nebraska law, employers of independent contractors are not liable on a theory of respondeat superior for the torts committed by the independent contractors. <u>Haag v. Bongers</u>, 256 Neb. 170, 589 N.W.2d 318 (Neb. 1999). However, Nebraska law recognizes that "an employer may be subject to liability for physical harm to third persons caused by the employer's failure to exercise reasonable care in selecting an employee, even if the employee is an independent contractor." <u>Harris v. Velichkov</u>, 860 F. Supp. 2d 970, 977 (D. Neb. 2012), (quoting <u>Kime v. Hobbs</u>, 252 Neb. 407, 562 N.W.2d 705 (Neb. 1997)). Thus, where a plaintiff brings an action against the independent contractor and the employer, the jury would consider the respective negligence of the plaintiff, employee, and employer under Nebraska's system of comparative fault. But the Defendants' proposed rule would create an anomaly: a jury could consider the negligence of the employer of an independent contractor but not the negligence of an employer in selecting an employee. <u>See</u> J.J. Burns, <u>Respondeat Superior as an Affirmative Defense: How Employers Immunize Themselves from Direct Negligence Claims</u>, Note, 109 Mich. L. Rev. 657, 669-70 (2011).

Under Nebraska law, the "right of control is the chief factor distinguishing an employment relationship from that of an independent contractor." <u>Kime</u>, 252 Neb. at 414, 562 N.W.2d at 711 (citing <u>Pettit v. Dep't of Soc. Servs</u>., 249 Neb. 666, 673, 544 N.W.2d 855, 861 (1996)). If the degree of control is the chief distinction between employment relationships and independent contractor relationships, it stands to reason that the more control a person has over another person, the more responsibility that person should bear for his or her acts or omissions arising out of that relationship. This is because the more control a person has, the more opportunity to take reasonable precautions to guard against risks to third parties. Under the Defendants' proposed rule, only if a person has <u>less</u> control over another is their negligence considered. The Defendants cannot point to any public policy or legal justification as to why the Nebraska Supreme Court would introduce these kinds of anomalies into our comparative fault system. This further underscores that Nebraska case law, as it currently exists, does not indicate a likelihood of the adoption of Defendants' proposed rule.

**B.    The Facts Of This Case Demonstrate Why The Nebraska Supreme Court Would Not Adopt The Defendant's Proposed Rule**

Defendants' Brief in Support of its Motion does not engage with the uncontroverted facts surrounding the Co-Op's hiring, training, and retention of Jensen. That is a critical omission because the facts in this case demonstrate why the Nebraska Supreme Court would not adopt their rule. Since Jensen has not admitted his liability, the jury should be allowed to consider the Co-Op's negligence in order to resolve the issue of liability for the Plaintiff's injuries. This is not the case where the facts regarding an employee's hiring, training, and supervision have nothing to do with the accident, and are being used to expand the scope of admissible evidence. Rather, the evidence in this case of the Co-Op's employment of Jensen is intimately connected with the evidence of Jensen's negligence. The facts in the case at bar demonstrate that the Co-Op's acts and omissions created a significant risk of harm to other drivers on the road, and therefore should be considered by the jury as a contributing cause to the accident. Therefore, the jury should be allowed to consider the Co-Op's negligence.

### 1.   The Co-Op's Negligence Should Be Considered Because Jensen Has Not Admitted His Negligence

Jensen has not conceded that he is liable for the Plaintiff's injuries he suffered in the accident. ([Filing No. 4](), ¶¶ 31-32). When the jury deliberates as to how the accident came to occur, it will consider the evidence that tends to show Jensen negligently caused the accident, as well as evidence that may tend to show the Plaintiff was negligent as to his own safety. ([Filing No. 4](), ¶ 72). The jury will weigh the evidence and come to a determination as to responsibility for the accident as between Jensen and the Plaintiff. It would be unfair to restrict the jury's ability to consider the Co-Op's negligence, where the responsibility for the accident is disputed. Had the Defendants admitted that Jensen was liable for the Plaintiff's injuries, then this would be a much closer case, as the only relevant issue would be damages. In such a case, a good deal of the evidence of Jensen's employment prior to the accident would add little value to the proceedings. See State v. Harrold, 256 Neb. 829, 852, 593 N.W.2d 299, 317 (1999) ("evidence may be irrelevant if it is directed at a fact not properly an issue under the substantive law of the case.") But, since liability is properly an issue in this case, the jury should be allowed to consider all the relevant information in deciding the issue.

Where the employee's negligence had been admitted to, the need for the jury to consider the employer's conduct would be lessened, because at least then, arguably the only disputed question would be damages, and since the employer would be responsible for all of those, the need for the jury to consider its negligence would be reduced.[2] But since it is a disputed question as to who caused the accident, the negligence of all the parties should be considered. Since Jensen has not admitted his liability, the scope of evidence available to the jury will be broad. Plaintiffs' are not attempting to introduce collateral issues into this case by bringing these claims. Rather, these claims are properly before the Court because the Co-Op was negligent in hiring an unfit individual, failing to train that individual in a responsible manner, and failing to

---

[2] It is important to note, however, that while the need to consider the employer's negligence would be reduced in such a case, it would not be eliminated. As noted above, in Nebraska, the plaintiff does not recover any damages if it is more than 50% responsible for its juries. See NEB. REV. STAT. § 25-21,185.09. Not allowing the jury to consider the employer's fault would improperly increase the likelihood that the plaintiff could not recover by eliminating the consideration of the employer's responsibility for the accident.

supervise his use of its property. Since the jury is tasked with determining who caused the accident, it would be unfair and arbitrary for it not to consider the negligence of a party which caused the accident.

### 2.   The Evidence Of The Co-Op's Negligent Acts And Omissions Directly Bear On The Issue Of Liability

The evidence demonstrating the Co-Op's negligence clearly establishes that its negligence caused the Plaintiff's injuries, and therefore it should be directly liable to the Plaintiff for his injuries. The evidence of the Co-Op's negligence is not collateral to this case. Rather, evidence of the Co-Op's negligence directly bears on the critical issue of liability, and must be considered by the jury in order for it to come to a just determination of the facts.

### a.   The Co-Op's Negligent Training And Supervision Of Jensen Caused The Accident

The accident occurred because Jensen obstructed the roadway on Highway 57. Jensen was obstructing the roadway because he had never been in the area before and did not understand how he was going to get to the place he was going. Jensen Depo. p. 58:5-8; 61:13). This obstruction lasted for a critical period of 15 seconds, where he was essentially not moving in the intersection. (Jensen Depo. p. 72:19-20; 73:13). Therefore, the information Jensen received the morning of the accident was clearly not sufficient to enable him to drive in a safe manner so as to not obstruct a highway. (Exhibit D, Deposition Transcript of Steve F. Sokol, P.E., J.D.) ("Sokol Depo.") p. 65:9-10) (noting that the position of the RoGator at the time of impact indicates the presence of driver indecision on Jensen's part).

Moreover, Jensen had almost no training, hands on or otherwise, regarding operating the machinery on a public highway in a safe and responsible manner. His two days of hands on training were primarily spent spraying fields.(Jensen Depo. p. 38:2-39:18). The only relevant training, the reminder to observe the rules of the road, was clearly not enough to instill the necessary safe and responsible driving skills when operating a piece of heavy machinery on a public road because Jensen was wrongfully obstructing the intersection. (Becker Depo. p. 38:4) The part of his job that created the most risk of harm to others was driving on the public roads, and the evidence in this

case shows that he was not trained as to how to go about doing that in a safe and responsible way. Far from being evidence that has no bearing on the main issue of the case, the evidence of the Co-Op's negligent training of Jensen directly bears on the disputed issue of liability.

> **b.    The Co-Op's Negligent Employment Of Jensen Caused The Accident**

Beyond negligently supervising Jensen and negligently training him, the Co-Op created an unreasonable risk to others by knowingly employing an individual who, at the time of his employment, could not operate a vehicle without an ignition interlock on account of a DUI conviction. (Becker Depo. p. 21:8-21:11). The Co-Op created an unreasonable risk of harm to third party drivers by failing to do essentially any due diligence on this prospective employee. That failure is noteworthy given that one of the only relevant pieces of information that the Co-Op knew at the time Jensen was hired was that he was unable to drive without the ignition interlock. It was not until after the accident that the Co-Op realized that it needed to calibrate the amount of time it trained its employees to their driving history. (Becker Depo. 72:2-16). Had the Co-Op adopted this reasonable approach earlier, it would have learned that Jensen had two speeding citations, one of which involved speeding 25 miles over the speed limit; a citation for careless driving, in which Jensen fell asleep and crashed the vehicle he was operating, and about a week prior to the accident, received a citation for a stop sign violation. (Jensen Depo. p. 94:13-94:18; 99:4; 99:10-22; 100:16). His driving record is compounded by the fact that he was 20 years old. Within four years of his having a driver's license, he had complied a long history of incidents that demonstrated that he would not drive a piece of heavy machinery in a safe manner.

Characteristic of the Co-Op's negligent conduct with respect to the employment of Jensen is its indifference towards the requirement that operators of RoGators possess a commercial driver's license (referred to hereinafter as a "CDL"). Under the Nebraska Motor Vehicle Operator's License Act, Jensen was required to have a CDL (and the training associated with that license) in order to drive the RoGator involved in the accident. See NEB. REV. STAT. § 60-465 (requiring a CDL to operate commercial vehicles over 26,100 pounds) (version in effect on June 26, 2013); compare also NEB.

Rᴇᴠ. Sᴛᴀᴛ. § 60-339 (exempting from the definition of motor vehicle, for purposes of registration only, both farm tractors and self-propelled fertilizer spreaders), with Nᴇʙ. Rᴇᴠ. Sᴛᴀᴛ. § 60-471 (broadening the definition of motor vehicles for purposes of the Operator's License Act and removing the exemption for self-propelled fertilizer spreaders), and Nᴇʙ. Rᴇᴠ. Sᴛᴀᴛ. § 60-619 (defining farm tractors to only be those vehicles that draw (pull) non-self-propelled machines). The vehicle in this case was a self-propelled fertilizer spreader within the definition of a commercial motor vehicle that weighed over 26,100 pounds, and was not otherwise exempt from the CDL requirement. (Exhibit E, Expert Report of Arnold G. Wheat, p. 20). Jensen was an employee of the Co-Op and not a farmer. Therefore, he did not fit within any exception and was required to have CDL to operate the RoGator.

Jensen did not have a CDL, and the Co-Op nonetheless hired him to operate the RoGator on the public roads. Had Jensen received the training associated with a CDL, he would likely have known not to turn a slow-moving vehicle left from the right shoulder in front of an on-coming vehicle. Furthermore, under Nebraska law, a person is disqualified from operating a commercial motor vehicle for one year upon his conviction for driving under the influence. Nᴇʙ. Rᴇᴠ. Sᴛᴀᴛ. § 60-4,168(1)(a). Therefore, the Co-Op not only employed an individual to drive a motor vehicle without the requisite CDL and the training associated with possession of the CDL, but employed an individual who was unable to obtain one even if he had attempted to do so.

The Co-Op was negligent in hiring Jensen. It hired an individual it should have known was not fit and not qualified to operate a piece of heavy machinery on the open roads. The scope of the jury's inquiry must be necessarily broad where it is presented with the issue of contested liability. The evidence of Jensen's incompatibility with the demands of his employment cuts right to the liability question. It is not a collateral presentation of prejudicial backstory; it is critical context for the jury to consider. The Co-Op is directly liable to the Plaintiff for its own wrongful conduct which caused him harm. It is responsible to him for the actions it failed to take. Thus, this Court should allow the trier of fact to consider the Plaintiff's claims for negligent hiring, training, and supervision against the Co-Op.

**C.     Defendants Have Not Met Their Burden To Show That Bifurcation Is Required**

Defendants argue that this Court should bifurcate the Plaintiffs' claims against Jensen and the Co-Op, arguing that: (1) the evidence of the Co-Op's negligence is generally factually distinct from the evidence of Jensen's negligence, and (2) there is the potential for prejudice to the Defendant when the jury considers the evidence relative to the negligence employment, hiring, and training claims. (Filing No. 45, p. 23-24). As the party moving for bifurcation, Defendants have the burden to "demonstrate it will be prejudiced if the claims are not bifurcated." Kermeen v. State Farm Ins. Co., 2015 WL 4727646 at *2 (D. Neb. Aug. 10, 2015) (citing Athey v. The Co-Op Ins. Exchange, 234 F.3d 357, 362 (8th Cir. 2000)). They have not met that burden.

Defendants claim that the evidence of the Co-Op's negligence is distinct from the evidence of Jensen's negligence is incoherent. As argued above, one cannot understand how this accident occurred without reference to all of the proximate causes leading up thereto. For example, one of the reasons Jensen obstructed the intersection between Highway 57 and 857th road is because he did not know where he was going. As his employer and entrustor of a piece of heavy machinery, the Co-Op did not adequately brief him on his route on the morning of the accident. Also, as noted above, by Jensen and Becker's own admissions, Jensen had relatively little hands-on training with respect to operating the RoGator on the public roads. Jensen's lack of training helps to explain why, from a causal perspective, the accident happened. Jensen's conduct stems from the fact that he didn't know what he was doing, and therefore the type and amount of training that Jensen received from the Co-Op directly bears on the determination of his negligence. Thus, Defendants' claim that the evidence regarding the respective negligence of both of the Defendants is not persuasive. The evidence of the Co-Op's liability will necessarily overlap with that of the evidence relating to Jensen's liability.

Given that there exists a broad overlap between the facts that support Jensen and the Co-Op's respective negligent conduct, the interest of judicial economy would not be served by bifurcation of the two claims. Plaintiffs' claims against Jensen and the Co-Op concern the same question: how did the accident happen? Severing two claims

which broadly overlap would not be an efficient use of judicial resources. It would be more efficient instead to try two factually and legally similar cases together in one action as opposed to severing them. The interest of judicial economy therefore strongly weighs in favor of overruling the Defendants' alternative Motion to Bifurcate.

Defendants raise the specter of prejudice. Assuming that the jury is instructed not to make inadmissible inferences from the evidence of the Co-Op's negligence, Nebraska law generally presumes that will suffice to avoid prejudice. Clinger v. Clinger (In re Estate of Clinger), 292 Neb. 237, 258, 872 N.W.2d 37, 53 (2015) ("[i]t is presumed a jury followed the instructions given in arriving at its verdict, and unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded."). In the event that any of the evidence regarding the Co-Op's negligence is substantially outweighed by unfair prejudice, it will be properly excluded by the trial court. See Fed. R. Evid. 403. More fundamentally, the Co-Op will not be prejudiced because the claims must be presented together in order for the jury to fairly come to a determination of how the accident occurred and to apportion the respective fault. Bifurcation in this context would prejudice the Plaintiff because only presenting evidence of Jensen's fault in a vacuum deprives the jury of the full context of how Jensen came to cause the accident in opposition to the spirit of Nebraska's system of comparative fault.

## CONCLUSION

The Defendants are asking this Court to adopt a rule which has no support in existing Nebraska case law, and which two federal courts have decided that the Nebraska Supreme Court would not adopt. Further, they have asked this Court to adopt their proposed rule even though they are contesting Jensen's fault, and where the evidence shows that the Co-Op, as Jensen's employer, is directly negligence for the harm suffered by the Plaintiffs. The Defendants also seek to have two claims brought against them severed, even though the two claims are inherently related factually, and even though the severance would not serve the interests of judicial economy. For the foregoing reasons, Plaintiffs request the Court deny Defendants' Motion for Partial Summary Judgment or, in the Alternative to Bifurcate.

DATED this 20th day of June, 2017.

<div style="margin-left:40%">

GARY GIBSON, JR. and SHAWNA
GIBSON, husband and wife, Plaintiffs.

</div>

BY:   */s/ Alexander D. Boyd*
       David C. Mullin, #21985
       Alexander D. Boyd, #25065
       Fraser Stryker PC LLO
       500 Energy Plaza
       409 South 17th Street
       Omaha, NE 68102-2663
       (402) 341-6000
       dmullin@fraserstryker.com
       aboyd@fraserstryker.com
       ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served by regular United States Mail, postage prepaid, this 20th day of June, 2017, to:

Randall L. Goyette
Baylor, Evnen, Curtiss, Grimit & Witt, LLP
Wells Fargo Center
1248 "O" Street
Suite 600
Lincoln, NE 68508

*/s/ Alexander D. Boyd*

1698814.06

18