IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GARY GIBSON, JR. and SHAWNA GIBSON, husband and wife, | ) ) ) | CASE NO.:  8:16-cv-296 |
| Plaintiffs, | ) ) ) | **PLAINTIFFS' BRIEF IN SUPPORT OF _DAUBERT_ MOTION TO EXCLUDE EXPERT OPINION TESTIMONY OF DEFENDANTS' EXPERTS ARNOLD WHEAT AND DAVID LOHF** |
| v. | ) ) ) | |
| BRIESON JENSEN and FARMERS CO-OPERATIVE, | ) ) ) | |
| Defendants. | ) | |

COME NOW, the Plaintiffs, Gary Gibson, Jr. and Shawna Gibson, husband and wife, by and through their undersigned counsel, and submit this Brief in Support of Plaintiffs' _Daubert_ Motion To Exclude Expert Opinion Testimony of Defendants' Experts Arnold Wheat and David Lohf.

## INTRODUCTION

Defendants have retained Arnold Wheat and David Lohf to provide opinions regarding the facts of the June 26, 2013 accident between Plaintiff Gary Gibson, Jr. and Defendant Brieson Jensen. In addition to providing calculations regarding Mr. Gibson's line of sight and the location of the accident, Defendants' experts also purport to provide opinions regarding the application of "human factors" in this case. Based on their human factor analysis, Defendants' experts' intend to opine that Mr. Gibson did not timely detect the Defendant's vehicle, was inattentive, should have taken different actions to respond to the vehicle, and failed to implement minimum competency driving skills that could have avoided the accident. The Court should exclude those opinions for three independent reasons: (1) neither of Defendants' experts are qualified to opine as to the application of human factor analysis, including whether Mr. Gibson was inattentive and failed to timely detect the vehicle; (2) their conclusions invade the province of the jury; and (3) their conclusions are speculative, based on unreliable methodologies, and are not based on sufficient facts and data.

**FACTUAL BACKGROUND**

**I.    Accident Background And Defendant Jensen's Testimony**

This suit arises out of the injuries Plaintiff Gary Gibson, Jr. sustained in a June 26, 2013 motor vehicle accident. While employed as a truck driver, Gary Gibson was driving a semi-truck when it collided with an agricultural vehicle driven by Defendant Brieson Jensen in Wayne County, Nebraska. (Amended Compliant, [Filing No. 4](#)). Upon impact, Gibson's semi-truck left the roadway and forcefully impacted a set of trees, causing the vehicle to stop and catch fire. ([Filing No. 4](#) at ¶ 16). Mr. Gibson lost consciousness, sustained multiple significant injuries, and does not have any memory of the accident. The Parties dispute the exact facts of the accident and Defendants deny any liability for the accident.

Defendant Jensen testified that he was driving a dry fertilizer spreader northbound on Highway 57 in Wayne, County, Nebraska. (Ex. C. to Ex. 1, Deposition of Brieson Jensen ("Jensen Depo.") 72:7-73:4). As he approached 857 Road, he stopped or slowed and moved his vehicle partially onto the right shoulder because he was not familiar with the area. (Jensen Depo. 72:7-73:4). Defendant Jensen testified that he "veered to the right" at 857 Road because he had "never been in the area" and was "trying to figure out do I go to the next intersection and wait there or use [857 Road]." (Jensen Depo. 72:7-73:4). He testified that he was "fully stopped or less than three miles an hour" for "no more than 15 [seconds]" with "75 percent on the road, 25 percent off the road" while looking around and trying to decide where to drive his vehicle. (Jensen Depo. at 70:16-74:16). Defendant Jensen testified that he then decided to turn left immediately at 857 Road and checked in front of him and checked his mirrors. (Jensen Depo. 73:16-74:16). Defendant Jensen then proceeded to drive his dry fertilizer spreader from being partially on the right shoulder to turning to his immediate left across Highway 57. (Jensen Depo. 73:16-74:16). As Defendant Jensen proceeded to turn left, he heard an air horn, pulled back on the throttle, and the collision with Mr. Gibson's semi-truck occurred. (Jensen Depo. 74:25-75:18).

**II.    Plaintiffs' Accident Reconstruction**

Plaintiffs retained Steve F. Sokol of FAAR Consulting, LLC to investigate and reconstruct the accident. Based on the investigation and calculations discussed in his

report, Mr. Sokol created detailed drawings of the physical evidence and the positions of the vehicles involved at specific points in time. (Ex. 3 to Deposition of Arnold Wheat ("Sokol Report") at Figure D). Mr. Sokol provided opinions based on his investigation of the physical evidence and based on comparisons of the deposition testimony to the physical evidence. Mr. Sokol opined that, among other things, the physical evidence indicates Defendant Jensen did not begin his left hand turn from the location stated in his deposition, but rather he began his turn from the position stated in Figure D in Mr. Sokol's report. Defendant Jensen began his turn while partially on the right shoulder and while north of the center of the intersection. Mr. Sokol opined that Defendant Jensen's vehicle was partially on the road and partially on the shoulder, stopped or moving very slowly, when Mr. Gibson crested the hill to the south of the accident location. (Sokol Report at 8). Mr. Sokol determined that Mr. Gibson began to move his semi-truck to the left lane before Defendant Jensen began to turn his dry fertilizer spreader to the left. (Sokol Report at 8). Mr. Sokol also determined that, based on the positions of the vehicles according to the physical evidence, Defendant Jensen would have been able to see Mr. Gibson's vehicle before Defendant Jensen began his turn if Defendant Jensen had actually and/or properly looked in his mirrors before beginning his turn. (Sokol Report at 8).

### III.    Defendants' Accident Reconstruction And "Human Factors" Analysis

On April 3, 2017, Defendants disclosed Arnold Wheat and David Lohf as retained accident reconstructionists. Mr. Wheat and Mr. Lohf both work for Accident Reconstruction Services, Inc. and provided a joint report. (Ex. 2 to Deposition of Arnold Wheat, ("Wheat Report")). The deposition of Mr. Wheat was taken on June 21, 2017. (Ex. B to Exhibit 1, Deposition of Arnold Wheat ("Wheat Depo.")). Mr. Lohf assisted Mr. Wheat in measuring and photographing the accident scene. (Wheat Depo. 20:23-21:3).

Mr. Wheat generally provided three categories of opinions in this case. First, he provided opinions regarding the locations of the physical evidence and the placement of the vehicles before and during impact. Mr. Wheat opined that Mr. Sokol was "thorough in his explanation of the vehicle dynamics related to the collision" and the vehicle positions and physical evidence as detailed by Mr. Sokol in his detailed drawings were

3

"certainly reasonable." (Wheat Report at 40; Wheat Depo 85:16-85:14). Neither Parties' expert gives an opinion about Mr. Gibson's speed. (Wheat Depo 14:4-7; 64:11-14; Sokol Report at 6).

Second, Mr. Wheat performed a line of sight analysis regarding the distances at which a portion of Defendant Jensen's vehicle would have been visible to Mr. Gibson's semi-truck as the truck proceeded northbound towards the accident site. (Wheat Report at 26-34). Notably, he did not perform the same kind of testing to determine the distance at which Defendant Jensen could have looked in his mirrors and see Mr. Gibson's truck, but estimates it at 600 to 800 feet. (Wheat Depo at 40:12-48:21).

Third, the remainder of Mr. Wheat's opinions generally relate to his analysis of the "human factors" relevant to the accident. (Wheat Report at 38-41). Mr. Wheat testified that analyzing "human factors" involves the "application of the human to the driving task and operation of the vehicle or piece of equipment." (Wheat Depo. 77:3-8). His report describes "human factors" as "the study and foundation of basic skills related to and involved with the driving task." (Wheat Report at 38). Mr. Wheat purported to then compare the accident scene and Mr. Gibson's driving maneuvers to the "driving skills for basic drivers" and the "level of minimum competency for vehicle drivers, as well as equipment operators within a highway environment." (Wheat Report at 38-39).

Defendant's experts opined that "[t]he human factors analysis supported a conclusion that potential and/or substantial hazards within the highway travel lanes, such as the northbound farm implement should be detectable as a potential hazard or immediate hazard within environmental situations analogous to the accident situation in this case." (Wheat Report at 39). Defendants' experts opine that Mr. Gibson's response to the dry fertilizer spreader was "uncontrolled and hazardous" and they "concluded that Mr. Gibson probably did not discern or detect the presence of the AGCO RoGator farm implement in a timely manner." (Wheat Report at 39). Defendants' experts allege that "[t]he lack of any detection, recognition or operational adjustment to the slow-moving farm implement was strongly indicative of Mr. Gibson's failure to implement basic, minimum competency driving skills that could have easily avoided a collision with a slower-moving farm implement." (Wheat Report at 39). Mr. Wheat later also added that

4

"Mr. Gibson was inattentive to the driving task and inattentive to the existing traffic situation presented to him as he traveled toward the north." (Wheat Report at 40).

As discussed below, neither Mr. Wheat nor Mr. Lohf is qualified to opine as to the application of "human factors," including whether Mr. Gibson was inattentive, should have detected the RoGator more quickly, or should have taken different maneuvers after seeing the RoGator. Further, those opinions are not helpful and invade the province of the jury on questions that the jury is entirely capable of answering. Finally, Mr. Wheat's testimony indicates that he did not reliably apply his claimed methodology to the facts of this case and his opinions are unreliable. For those reasons, the Court should exclude Mr. Wheat and Mr. Lohf's human factor opinions, including, but not limited to, all opinions that Mr. Gibson was inattentive, did not timely detect the RoGator, should have more quickly detected the RoGator, did not implement minimum competency driving skills that could have avoided the accident, did not maintain control of his vehicle, and should have taken different maneuvers after detecting the RoGator.

## **LEGAL STANDARD UNDER RULE 702**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under Rule 702, courts act as "gatekeepers" to ensure that proffered expert testimony "is not only relevant, but reliable." *Daubert v. Merrell-Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). "Evidence based on scientific, technical, or specialized

5

knowledge is admissible if: (1) it is relevant—'useful to the finder of fact in deciding the ultimate issue of fact;' (2) the witness is 'qualified to assist the finder of fact;' and (3) it is 'reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.'" *Hill v. Southwestern Energy Co.*, 858 F.3d 481 (8th Cir. 2017).

To establish that testimony is reliable, "the party offering the expert testimony 'must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid.'" *Khoury v. Philips Med. Sys.*, 614 F.3d 888 (8th Cir. 2010) (citations omitted). The burden of establishing admissibility and reliability rests on the proponent of the expert testimony. *Kammerer v. Wyeth*, No. 8:04CV196, 2011 U.S. Dist. LEXIS 126882, at *3-4 (D. Neb. Nov. 1, 2011) (citing *Barrett v. Rhodia*, 606 F.3d 975, 980 (8th Cir. 2010)). "[I]t is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001).

A reliable opinion must be based on scientific methodology rather than on subjective belief or unsupported speculation. *Daubert*, 509 U.S. at 590. "Where 'opinion evidence ... is connected to existing data only by the *ipse dixit* of the expert,' a district court 'may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Smith v. Cangieter*, 462 F.3d 920, 924 (8th Cir. 2006).

## ARGUMENT

### I. Defendants' Experts Are Not Qualified To Provide Expert Opinions In The Field Of "Human Factors"

While the field of human factor analysis can be a proper area for expert testimony, a witness opining on that topic must have specialized training and experience in order to do so under Rule 702. *See, e.g., Burgett v. Troy-Bilt LLC*, 579 Fed. App'x. 372, 377 (6th Cir. 2014). Neither of Defendants' accident reconstruction experts have the requisite training and experience to provide expert opinions in the area of human factor analysis.

6

Mr. Wheat's formal education is limited to a bachelor of science in criminal justice, an associate's degree in applied sciences with a major in political science, and "classes in civil engineering." (Ex. 1 to Wheat Depo, Wheat Curriculum Vitae ("Wheat CV") at 2). His professional experience consists of law enforcement and accident reconstruction experience. (Wheat CV at 1). His curriculum vitae states that he received unspecified "specialized training" in 29 different "general subject areas since 1977." (Wheat CV at 2). One of the "general subject areas" listed is "Human Factors related to Vehicle Operation Driver Perception, Reaction, Response." (Wheat CV at 2). However, his curriculum vitae does not identify any specific coursework or seminars of any kind concerning human factor analysis. Mr. Wheat admits that his curriculum vitae summarizes all the relevant training he has with regard to human factor analysis. (Wheat Depo. 78:1-8).

Outside of publications on the issue of determining perception time, Mr. Wheat testified that he does not know that he "looked at any [publications] specifically" to determine his human factors analysis in this case. (Wheat Depo 78:9-79:12). He instead included in his report "general references" to a number of publications, some of which discuss human factors. (Wheat Depo. 78:9-79:12).

Regarding Mr. Lohf, it does not appear that he claims to have any qualifications in the area of human factors. It appears his involvement in this case was limited to providing support to Mr. Wheat while he performed the investigation in this case. Mr. Lohf's curriculum vitae does not even list human factors on his list of "general areas" in which he has received some form of specialized training. (Ex. B to Exhibit 1 at 56, Curriculum Vitae of David Lohf ("Lohf CV") at 1). Mr. Lohf's degrees and coursework are in police science, land use, geology, and political science. (Lohf CV at 1). To the extent Defendants would attempt to use Mr. Lohf as an alternative to Mr. Wheat, he has even less qualifications, if any, in the area of human factors.

As recently as 2013, Mr. Wheat's attempts to give human factor opinions were excluded by a federal court in part because he was not qualified to render opinions in that field. The United States District for the District of Wyoming in *Buchan v. Wilson and Merganthaler Transfer and Storage Company* discussed the field of human factor analysis and found Mr. Wheat not to be qualified in that area. No. 11-CV-350J, 2013

7

U.S. Dist. LEXIS 135077 (D. Wyo. Jan. 22, 2013). The *Buchan* court cautioned that "[a]lthough human factors engineering is a legitimate discipline, in a forensic setting, the application of human factors principles can be highly subjective and thus conveniently malleable." *Id.* at *2. "Human factors testimony which is proffered without a showing of objective support (testing or, at least, independent support in relevant literature) invites close scrutiny to determine whether the expert's work is an exercise in facile advocacy (*e.g.* the 'ipse dixit of the expert')." *Id.* The court excluded Mr. Wheat's opinions with respect to human factors and explained as follows:

> Mr. Wheat has been designated by the defendants as an accident reconstruction expert. There is nothing persuasive that has been disclosed to the Court or opposing counsel regarding Mr. Wheat's methodology in arriving at his human factors opinions. Other than limited courses and seminars, Mr. Wheat has no particular qualifications that indicate his testimony and opinions are well-founded in science, education and training. There is no indication that publications referenced have been peer reviewed or are regarded as reliable within the pertinent scientific community. Further, the opinions tendered in his report fail to consider other factors that might have been pertinent to his conclusion that the decedent was driving too fast and the accident was her fault. Any suggestions from Mr. Wheat in that regard will not be helpful to the jury, who will be able to draw their own conclusions after hearing all the evidence at trial.

*Id.* at *4.

Mr. Wheat has not remedied any of the shortcomings identified by the *Buchan* court. Rather, he testified that he does not even recall authoring an opinion in that case, let alone having his opinions excluded. (Wheat Depo. 102:10-104:6; *but see* Ex. A to Ex. 1 at 59, Arnold Wheat Expert Testimony list (identifying *Estate of Pickering v. Merganthaler Transfer* as former expert testimony)). Mr. Wheat was not qualified in 2013 to provide expert opinions on human factor analysis and he is still not qualified to do so. While he may be qualified to provide opinions limited to the physical reconstruction of the accident if he conducted a reliable investigation, he is not qualified to provide opinions as to what Mr. Gibson should have done or what a reasonable driver would have done under similar circumstances. Mr. Lohf similarly does not have any qualifications that would allow him to testify to the analysis of any human factors that contributed to the accident. As a result, the Court should exclude Defendants' experts

8

from testifying regarding their application of the "human factors" and their opinions that Mr. Gibson did not timely detect the RoGator, should have detected the RoGator sooner, and should have taken different actions to respond to the RoGator.

## II. Defendants' Experts' Opinions That Mr. Gibson Was Inattentive, Did Not Timely Detect The Defendant's Vehicle, And Did Not Implement Minimum Competency Driving Skills Invade The Province Of The Jury

The Court should also exclude Mr. Wheat's and Mr. Lohf's human factor opinions, including opinions that Plaintiff was inattentive, did not timely detect or respond to the dry fertilizer spreader, and did not implement minimum competency driving skills, because those opinions invade the province of the jury. While opinions on the ultimate issue are not *automatically* inadmissible, "courts must guard against invading the province of the jury on a question in which the jury was entirely capable of answering without the benefit of expert opinion." *Am. Auto. Ins. Co. v. Omega Flex*, Inc., 783 F.3d 720, 725 (8th Cir. 2015).

Courts in similar circumstances have excluded purported expert opinions that a driver was inattentive. In *Jones v. Beelman Truck Co.*, a retained accident reconstructionist calculated the distance at which a driver could see a pedestrian before an accident. No. 4:13-CV-252, 2015 U.S. Dist. LEXIS 74246 (E.D. Mo. June 9, 2015). He then opined that the driver was inattentive and had the driver been attentive he could have avoided the accident. *Id.* at *3-4. The court found that while the expert was qualified to testify as to the line of sight distance, the driver's reaction distance, and the vehicle's stopping distance, the court did not permit the expert to opine that the driver was inattentive or that he could have avoided the accident. *Id.* at *8. The court held that the expert's opinion that the driver was inattentive "squarely addresses the ultimate issue" of whether the driver was negligent and "invade[s] the province of the jury on questions that the jury is entirely capable of answering as the trier of fact." *Id.* at *9.

In the case at bar, while Mr. Wheat may be qualified to calculate a line of sight and determine distances based on perception time and physical evidence (if done so reliably), his opinions that Mr. Gibson "was inattentive to the driving task and inattentive to the existing traffic situation," did not timely detect the RoGator, should have detected the RoGator sooner, and should have taken different actions to respond to the RoGator

9

all impermissibly invade the province of the jury and should be excluded. These opinions squarely address the ultimate issue of whether Mr. Gibson was contributorily negligent. The jury is capable of answering those questions after being presented with the objective facts regarding the reconstruction of the accident. As the *Buchan* court previously noted regarding Mr. Wheat's opinions, Mr. Wheat's human factor analysis opinions are "not be helpful to the jury, who will be able to draw their own conclusions after hearing all the evidence at trial." 2013 U.S. Dist. LEXIS 135077 at * 4.

### III. Defendants' Experts' Opinions Are Speculative And Not Reliable

Even if Defendants' experts were qualified to offer human factor opinions, and even if those opinions on the ultimate issues were not excluded, their opinions are not reliable because the opinions are not based on sufficient facts or data and the experts did not reliably apply their methods to the facts of the case. "Although human factors engineering is a legitimate discipline, in a forensic setting, the application of human factors principles can be highly subjective and thus conveniently malleable." *Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1103 (W.D. Okla. 2009), *aff'd*, 405 F. App'x 296 (10th Cir. 2010). "Human factors testimony which is proffered without a showing of objective support (testing or, at least, independent support in relevant literature) invites close scrutiny to determine whether the expert's work is an exercise in facile advocacy (*e.g.* the 'ipse dixit of the expert')." *Id.* A review of the facts and methodologies discussed in Defendants' expert report, as well as Mr. Wheat's deposition, demonstrate that the opinions he reached in this case do not meet the reliability requirements of Rule 702.

Mr. Wheat's ultimate human factor opinions are that Mr. Gibson did not "discern and detect, in a timely manner," Defendant Jensen's dry fertilizer spreader and he was therefore "inattentive to the driving task and inattentive to the existing traffic situation." (Report at 40-41). In order for Mr. Wheat to make those assertions, he must first determine when and where Mr. Gibson "detected" Defendant Jensen's vehicle. Defendants' experts' findings on that point are conflicting and not grounded in sufficient data or in reliable methodologies. Defendants' report states that "the physical evidence also indicated that the aggressive braking and swerving response of the commercial motor vehicle occurred at a point when the vehicle was approximately 250 feet of the

eventual collision location." (Wheat Report at 39). However, when asked during his deposition about his opinion regarding the time and location of Mr. Gibson's detection of the RoGator, Mr. Wheat testified as follows:

> Q: So it's your testimony that you believe Mr. Gibson did not detect the RoGator before he began applying his brakes?
>
> A: Well, the response that we see in braking and steering by Mr. Gibson is a function of him detecting the vehicle, so your question was a little bit skewed.
>
> Q: So what's your opinion regarding the first time he [Mr. Gibson] detected the RoGator?
>
> A: Well, his position is obviously on the north side of that very gradual hill. He's on the downhill grade. And he was within 150 feet because we do not see evidence of braking action on -- or from his truck-tractor until the front of his Kenworth was within approximately 150 feet of the eventual collision.

(Wheat Depo at 58:23-59:13). Mr. Wheat appears to opine that Mr. Gibson did not "detect" the RoGator until the time that Mr. Gibson's vehicle actually began creating tire marks due to the significant braking. Mr. Wheat's report states "the tire 'skid marks' crated by the braking action of his truck tractor did not start until the front of his vehicle was within a distance of 150 feet from the eventual collision." (Report at 37). However, Mr. Wheat's own testimony explains that **the point at which a danger is detected and the beginning of physical evidence are not the same.**

     Mr. Wheat determined that Mr. Gibson would have taken 1.1 to 1.2 seconds to perceive the danger before being reacting to it. (Report at 37). Further, while not disclosed in his report, Mr. Wheat conceded in his 2005 book that additional time must be accounted for between the time a driver starts to apply significant braking pressure and when tire marks begin. Mr. Wheat indicated you must consider "the time and distance consumed by the commercial vehicle from the initiation of pressure on the brake, the time required to build system pressure to effectively slow the vehicle, and then the transition from rolling tires to fully sliding tires on the vehicle." (Wheat Depo 100:19-101:11; Ex. 4 to Wheat Depo at book page 47). Mr. Wheat's book then states

11

that "Studies have shown that this time duration could be within a range of approximately 0.25 to 1.5 seconds, depending on the mechanical set-up and condition of the brake system, vehicle design, loading considerations, and pavement surface conditions." (Wheat Depo. 101:14-24; Depo Ex. 4 at book page 47). However, Mr. Wheat did not perform any such calculations in this case. Rather, he admitted that he used his "judgment" to determine that it would have taken "approximately half of a second" for Mr. Gibson's truck to begin creating tire marks after he applied brake pressure. (Wheat Depo 101:7-102:9). Even if that number were reliable, Mr. Wheat's opinion that Mr. Gibson didn't "detect" the RoGator until the beginning of the 150 feet of tire marks does not take into account that lag time before tire marks are created.

Mr. Wheat's opinion that Mr. Gibson did not timely detect the RoGator also fails to take into account other relevant factors that explain that Mr. Gibson did, or could have, detected the RoGator before the tire marks began. Mr. Wheat admits that even "moderate to aggressive brake application" can cause significant slowing without leaving physical evidence. (Wheat Depo 54:3-21). Similarly, you can let up off the gas without creating physical evidence. (Wheat Depo 54:3-21). Both of those actions would occur *after* you detect a potential danger. However, Mr. Wheat determined that no such actions were likely taken in this case based on his judgment and review of the tire marks and the severity of the impact. (Wheat Depo 54:3-56:1).

Mr. Wheat also disregards that Mr. Gibson could have detected the RoGator while it was stopped partially on the road and partially on the shoulder, before it began to turn in front of Mr. Gibson. The direction of the tire marks indicates Mr. Gibson began to move his vehicle into the left lane to go around the RoGator before he began the RoGator began its turn. (Figure D to Sokol Report). After the RoGator began its turn, the RoGator then became a danger that caused Mr. Gibson to aggressively apply his brakes. However, Mr. Wheat determined that Mr. Gibson did not "detect" the RoGator before applying his brakes because studies not discussed in his report suggest a "normal lane change" takes five to eight seconds. (Wheat 56:21-58:22).

Defendants' expert opinions are unreliable, speculative, and should be excluded. *See Allmaras v. Mudge*, 820 P.2d 533, 545 (Wyo. 1991) (dissent) (noting that Mr. Wheat's opinions in that case about a driver's behavior were "rank conjecture").

12

Mr. Wheat did not reliably calculate the time and distance lag between the time Mr. Gibson detected the RoGator and when physical evidence (skid marks) started to exist. Mr. Wheat disregarded that Mr. Gibson (1) detected the RoGator much earlier than 150 feet before the accident due to the application of perception time and the configuration of his vehicle; and (2) Mr. Gibson could have detected the RoGator much earlier without creating physical evidence by moving into the left lane, applying moderate braking pressure, or even letting up on the gas. Mr. Wheat's opinion that Mr. Gibson did not timely detect the RoGator is not reliable and should be excluded.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court exclude Mr. Wheat and Mr. Lohf's human factor opinions, including, but not limited to, all opinions that Mr. Gibson was inattentive, did not timely detect the RoGator, should have more quickly detected the RoGator, did not implement minimum competency driving skills that could have avoided the accident, did not maintain control of his vehicle, and should have taken different maneuvers after detecting the RoGator. Mr. Wheat and Mr. Lohf are not qualified to offer their human factor opinions, their opinions invade the province of the jury, and their opinions are not based on reliable methods or sufficient facts or data.

DATED this 14th day of July, 2017.

                              GARY GIBSON, JR. and SHAWNA
                              GIBSON, husband and wife, Plaintiffs.

BY:   */s/ Alexander D. Boyd*
        David C. Mullin, #21985
        Alexander D. Boyd, #25065
        Fraser Stryker PC LLO
        500 Energy Plaza
        409 South 17th Street
        Omaha, NE 68102-2663
        (402) 341-6000
        dmullin@fraserstryker.com
        aboyd@fraserstryker.com
        ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court for the United States District Court for the District Court of Nebraska using the CM/ECF system this 14th day of July, 2017, which system sent notification of such filing to counsel of record.

*/s/ Alexander D. Boyd*

1705246.05