IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GARY GIBSON, JR. and SHAWNA GIBSON, husband and wife, | ) ) ) | CASE NO.:  8:16-cv-296 |
| Plaintiffs, | ) ) | **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF _DAUBERT_ MOTION TO EXCLUDE EXPERT OPINION TESTIMONY OF DEFENDANTS' EXPERTS ARNOLD WHEAT AND DAVID LOHF** |
| v. | ) ) ) | |
| BRIESON JENSEN and FARMERS CO-OPERATIVE, | ) ) ) | |
| Defendants. | ) ) | |

COME NOW, the Plaintiffs, Gary Gibson, Jr. and Shawna Gibson, husband and wife, by and through their undersigned counsel, and submit this Reply Brief in Support of Plaintiffs' _Daubert_ Motion To Exclude Expert Opinion Testimony of Defendants' Experts Arnold Wheat and David Lohf. (Filing No. 60).

## INTRODUCTION

Defendants' accident reconstruction experts, Arnold Wheat and David Lohf, opined that Plaintiff was inattentive, did not timely detect the vehicle driven by Defendant Jensen (the "RoGator"), should have more quickly detected the RoGator, did not implement minimum competency driving skills that could have avoided the accident, did not maintain proper control of his vehicle, and should have taken different maneuvers after detecting the RoGator. Plaintiffs moved to exclude these opinions under _Daubert_ and Rule 702 on grounds that Defendants' experts were not qualified to render those human factor opinions, the opinions improperly invade the province of the jury, and Defendants' experts' opinions are speculative and are not the product of reliable methodologies. (Filing No. 60 and Filing No. 62). In response, Defendants submitted a new affidavit from Mr. Wheat supplementing his purported human factor training. Defendants also argued Mr. Wheat's opinions are permissible because he used "the scientific method" and "scientifically-based" tools. Defendants do not discuss or defend the specific defects Plaintiffs identified in the methodologies Mr. Wheat applied

to this particular case. Defendants' Brief also does not refute that Mr. Wheat's opinions impermissibly invade the province of the jury.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony in this matter. As a result, Defendants' reliance on *Schafersman v. Agland Coop.*, [631 N.W.2d 862](#) (Neb. 2001), Neb. Rev. Stat. § 27-702, and Nebraska state court case law regarding the review of an expert's qualifications and opinions is misplaced. While the resulting analysis is often similar, this Court is not bound by the Nebraska Rules of Evidence or the Nebraska Supreme Court's interpretation of *Daubert v. Merrell-Dow Pharmaceuticals*, [509 U.S. 579, 589](#) (1993), and its progeny.

## ARGUMENT

**I.    Defendants Do Not Refute That Defendants' Experts' Opinions Improperly Invade The Province Of The Jury**

Defendants' Brief does not discuss nor contest that many of Mr. Wheat's conclusions improperly invade the province of the jury. (*Compare* [Filing No. 62 at 9-10](#) *with* [Filing No. 65](#)). The Court should exclude Mr. Wheat's opinions that Mr. Gibson "was inattentive to the driving task and inattentive to the existing traffic situation," failed to "implement basic, minimum competency driving skills," did not timely detect the RoGator, should have detected the RoGator sooner, and should have taken different actions to respond to the RoGator because such opinions impermissibly invade the province of the jury. These opinions squarely address the ultimate issue of whether Mr. Gibson was contributorily negligent and are not helpful to the jury. *See, e.g., Jones v. Beelman Truck Co.*, No. 4:13-CV-252, [2015 U.S. Dist. LEXIS 74246](#) (E.D. Mo. June 9, 2015) (excluding opinions that a driver was inattentive or could have avoided the accident if he was more attentive because those opinions invaded the province of the jury); *see also Am. Auto. Ins. Co. v. Omega Flex*, Inc., [783 F.3d 720, 725](#) (8th Cir. 2015).

**II.    Defendants' Experts' Opinions Are Speculative And Not Reliable**

Rather than discussing the particular defects Plaintiffs' identified in Mr. Wheat's analysis and methodology, Defendants attempt to shield their experts' opinions by asserting they "used the scientific method" and used tools that are "generally accepted," "scientifically-based," and "industry-accepted." ([Filing No. 65 at 13-15](#)). However, Rule

702 requires not only that an expert generally utilize reliable principals and methods, but also that the expert based their testimony on "sufficient facts and data" and "reliably applied the principals and methods to the facts of the case." Fed. R. Civ. P. 702.

Mr. Wheat's ultimate conclusions that Mr. Gibson did not timely detect the RoGator and that he was inattentive are not based on the reliable application of his purported methodologies and are not based on sufficient facts or data. Defendants do not defend nor explain Mr. Wheat's conclusion that the first time Mr. Gibson detected the RoGator was "within 150 feet" of the point of impact because that was the position of the semi-truck when the tire marks actually began. (Wheat Depo at 58:23-59:13). Rather, as discussed in detail in Plaintiffs' Brief, Mr. Wheat's opinion does not take into account the time lag between when brakes are applied and when physical evidence is created and does not take into account Mr. Gibson's perception response time. (Filing No. 62 at 10-13).

Mr. Gibson detected the RoGator as a danger *before* the point in time when his vehicle *actually* began making tire skid marks. Mr. Wheat ignores the distinction between detecting a vehicle and the beginning of physical evidence. Mr. Wheat assumes that Mr. Gibson detected the RoGator at the point where the tire marks began, rather than the time *before* the tire marks began based on the perception response time and brake lag. Defendants do not discuss that defect.

He also ignores the distinction between (1) perceiving a vehicle that can be avoided without aggressive evasive actions, and (2) perceiving a vehicle subsequently alter its course and become a danger that requires aggressive evasive action. As Mr. Jensen testified, he was stopped or going less than three miles an hour for up to 15 seconds after he moved partially onto the right shoulder. (Jensen Depo. 70:16-74:16). He then decided to turn left across Highway 57. (*Id.*). Mr. Wheat assumes Mr. Gibson did not take *any* actions in response to seeing the RoGator stopped partially on the shoulder and partially on the road because Mr. Wheat did not see physical evidence suggesting those actions. He ignores (1) that there *was* physical evidence of an earlier detection because the direction of the tire marks that indicate Mr. Gibson began moving into the left lane before applying his brakes, and (2) Mr. Wheat admits that even

3

aggressive braking or other maneuvers can occur without physical evidence. Defendants did not attempt to address those defects in Mr. Wheat's analysis.

Defendants further do not defend Mr. Wheat's admitted use of his "judgment," rather than the calculations suggested *in his own book*, to calculate the time lag between when brakes are applied and when physical evidence (e.g., tire marks) begin to occur. (Wheat Depo 101:7-102:9). Rather than address any of the specifics of his actual methodology that led to his opinions in this case, Defendants instead contend Mr. Wheat's used a "generally accepted and recognized" methodology.

Defendants also continue to place undue reliance on Mr. Wheat's use of the IDRR software regarding data from drivers exposed to similar traffic situations. ([Filing No. 65 at 13-15](#)). Mr. Wheat testified that he used the IDRR software to determine Mr. Gibson's perception response time. (Wheat Depo. 60:1-61:25; 78:9-19). Determining a driver's perception response time is only a small piece of the larger analysis and accident reconstruction. Driver perception response time alone does not provide foundation for opinions regarding whether a driver was attentive, met minimum competency driving skills, or should have taken other actions. Further, Mr. Wheat ignored that perception response time when he concluded that Mr. Gibson first detected the RoGator at the point when the tire marks actually began, rather than then working backwards to account for the perception response time and brake lag. Mr. Wheat did not reliable apply any methodology when he opined that Mr. Gibson first detected the RoGator at the location when his vehicle actually began to make tire marks. As a result, Mr. Wheat's subsequent opinions that Mr. Gibson was inattentive and did not comply with minimum driving skills, in addition to being inadmissible conclusions that invade the province of the jury, are not based on reliable principals and methods and should be excluded. Defendants cannot rely on bare legal conclusions that his methodology was "scientifically-based" and then refuse to defend his actual application of that methodology to the facts of the case.

### III.   Defendants' Experts Are Not Qualified To Provide Expert Opinions In The Field Of "Human Factors"

Defendants' Rule 26(a)(2) disclosure for Arnold Wheat and David Lohf included a 47 page expert report and 6 and 2 page curricula vitae for Mr. Wheat and Mr. Lohf, respectively (Wheat Report, Plaintiffs' Ex. 1A). Defendant's Rule 26(a)(2) disclosures,

which were due on May 10, 2017, were required to contain "the witness's qualifications." Fed. R. Civ. P. 26(a)(2)(B)(iv); Filing No. 35 at 2. Despite a substantial portion of Mr. Wheat's opinions being "human factor" opinions, his curriculum vitae's only reference to his particular qualifications in that regard is that he received unspecified "specialized training" in 29 different "general subject areas since 1977," one of which is "Human Factors related to Vehicle Operation Driver Perception, Reaction, Response." (Wheat CV at 2). His curriculum vitae does not mention a single seminar, course, or even presentation actually attended by Mr. Wheat in that regard.

The topic of Mr. Wheat's specific training with regard to human factors analysis was discussed during Mr. Wheat's June 21, 2017 deposition and he simply deferred to his curriculum vitae:

> Q:   Do you have any specialized education or training in the field of human factors, specifically?
>
> A:   Yes, I do.
>
> Q:   Any training or education that's not detailed in your curriculum vitae that we've already put into evidence -- or offered?
>
> A:   No, it's summarized within it.

(Wheat Depo. at 78:1-8). However, Mr. Wheat has now submitted a July 27, 2017 affidavit prepared for the specific purpose of supplementing his qualifications and opposing Plaintiff's *Daubert* Motion. (Filing No. 66-2, Wheat Affidavit). Mr. Wheat now states that he attended "52 formal classes, professional training seminars and educational forums … since 1980, relating to the topic of human factors." (Wheat Affidavit). Mr. Wheat's disclosed curriculum vitae did not detail or even summarize that newly disclosed education and training.

Even if Mr. Wheat's newly submitted affidavit were considered, the true extent of Mr. Wheat's claimed education and training cannot be determined. Despite preparing an affidavit for the specific purpose of supplementing his qualifications with regard to human factors analysis, Mr. Wheat chose not to provide meaningful information regarding his claimed trainings. He chose to only provide the year, the state, and the group that was the purported "Provider of Human Factors Education." (Ex. A to Wheat Affidavit). He did not provide, for example, the *name* of a *single* event or training, the nature of any specific trainings, whether the trainings were dedicated to human factors

analysis, or the dates or approximate lengths of any events. Rather, he continues to claim to "summarize" his qualifications and requests that the Court simply defer to him and his experience.

Surprisingly, Defendants did not even attempt to discuss or distinguish the District Court of Wyoming's holding on this specific issue in *Buchan v. Wilson and Merganthaler Transfer and Storage Company*, No. 11-CV-350J, 2013 U.S. Dist. LEXIS 135077 (D. Wyo. Jan. 22, 2013). The federal court in that matter excluded Mr. Wheat's opinions with respect to human factors and held, among other things, that "[o]ther than limited courses and seminars, Mr. Wheat has no particular qualifications that indicate his testimony and opinions are well-founded in science, education and training." *Id.* at *4. Defendants did not explain either why the *Buchan* court was wrong or what additional training Mr. Wheat has completed since the 2013 opinion. While Plaintiffs acknowledge that *Buchan* is not binding on this Court, it nonetheless presents a recent federal district court's analysis on the precise issue regarding the same expert currently proffered as an expert. Even when considering his deposition testimony, his curriculum vitae, and his newly drafted affidavit, he has still done little more than broadly claim that he has a substantial amount of experience and attended many events in many different areas. While Mr. Wheat is qualified to perform accident reconstructions and opine as to sight distance and perception time, he is not qualified to go further and opine as to specific human factor opinions regarding whether Mr. Gibson *timely detected* the RoGator, *should have detected* the RoGator sooner, and *should have taken different actions* to respond to the RoGator.

Finally, Defendants' arguments that Mr. Wheat utilized "15 to 20 specific treatises, books, research studies and professional, peer-reviewed publications" to support his human factors analysis is a red herring. (Filing No. 65 at 4). As Mr. Wheat testified in his deposition, those publications were utilized by the IDRR software to calculate Mr. Gibson's perception-response time. (Wheat Depo. 78:9-79:2). Plaintiffs are not concerned with Mr. Wheat's conclusion that Mr. Gibson's perception response time was 1.1 to 1.2 seconds, rather than the 1.5 seconds utilized by Plaintiffs' expert, Steve Sokol. Rather, Mr. Wheat does not have sufficient qualifications or foundation for his further conclusions that Mr. Gibson *should have* detected the RoGator earlier, whether

Mr. Gibson "*timely*" detected the RoGator, whether he was inattentive, and whether he implemented "basic, minimum competency driving skills that could have easily avoided a collision." (Wheat Report at 37-41). When asked whether, outside of determining Mr. Gibson's perception response time, Mr. Wheat relied on any publications or data for his human factor opinions, he testified that he does not know that he "looked at any [publications] specifically," but he included some publications in his report as "general references." (Wheat Depo. 78:9-79:12).

Defendants do not appear to claim that Mr. Lohf has any human factors training or experience and Defendants to not intend to call Mr. Lohf as a testifying expert witness. The Court should exclude Defendants' experts from testifying regarding their application of the "human factors" and their opinions that Mr. Gibson did not timely detect the RoGator, should have detected the RoGator sooner, should have taken different actions to respond to the RoGator, and did not comply with minimum competency driving skills.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court exclude Mr. Wheat and Mr. Lohf's human factor opinions, including, but not limited to, all opinions that Mr. Gibson was inattentive, did not timely detect the RoGator, should have more quickly detected the RoGator, did not implement minimum competency driving skills that could have avoided the accident, did not maintain control of his vehicle, and should have taken different maneuvers after detecting the RoGator. Mr. Wheat and Mr. Lohf are not qualified to offer their human factor opinions, their opinions invade the province of the jury, and their opinions are not based on reliable methods or sufficient facts or data.

DATED this 2nd day of August, 2017.

GARY GIBSON, JR. and SHAWNA
GIBSON, husband and wife, Plaintiffs.


BY:   */s/ Alexander D. Boyd*
David C. Mullin, #21985
Alexander D. Boyd, #25065
Fraser Stryker PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102-2663
(402) 341-6000
dmullin@fraserstryker.com
aboyd@fraserstryker.com
ATTORNEYS FOR PLAINTIFFS


CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court for the United States District Court for the District Court of Nebraska using the CM/ECF system this 2nd day of August, 2017, which system sent notification of such filing to counsel of record.


*/s/ Alexander D. Boyd*

1720177.02